TRIPP, Respondent, v. SMITH, State Superintendent of Banks, et al, Appellants.

(222 N. W. 943.)

(File No. 6688. Opinion filed January 5, 1929.)

*Roy E. Willy,* of Sioux Falls, *F. M. Scoblic,* of Tyndall, *Null & Royhl,* of Huron, and *T. B. Thorson,* of Pierre, for Appellants.

*Bailey & Voorhees,* of Sioux Falls, and *Wicks & Quinn,* of Scotland, for Respondent.

BURCH, P. J. This action is brought to recover upon four certificates of deposit purporting to have been issued by the Security Bank, defendant, to plaintiff, Robert B. Tripp, in the following

amounts given in the order stated in the complaint, namely, $6,000, $15,000, $2,500, and $15,000. All the certificates originated in the same transaction and involve the same defenses. The Security Bank is now insolvent and in the hands of F. R. Smith, superintendent of banks, for liquidation. All facts were stipulated and found by the court as stipulated.

The Security Bank is a corporation. At all times material to the issues involved George E. Pfeifle was the cashier and managing officer of the bank. The certificates involved in this action had their inception in a fraudulent scheme of Pfeifle and one Frank R. Beddow, who conspired to issue certificates of deposit upon the regular forms then in use by the Security Bank and to negotiate them for their own use and benefit. Beddow was in no way connected with the bank as an officer, agent, or employee, or otherwise. Such certificates were to be made payable to the order of such persons as Beddow would designate; were to be delivered to Beddow or his representative for negotiation; no record was to be made in the books of the bank; and the bank was to receive no consideration therefor. In furtherance of this scheme Pfeifle took from the vaults of the Security Bank the last-numbered pad of blank certificates of deposit, containing 100 blank forms. The four certificates in suit were issued from this pad of forms, and no record was made of the transaction, and the bank received no consideration.

The certificates in suit originated in the following transaction: Some time in March, 1923, plaintiff invested in three promissory notes and mortgages executed by George Bertus, Martin J. Johnson, and Martin J. Bertus, each note being for $10,000. A part of the funds so invested belonged to Yankton College, a part to the estate of Gertrude A. Loynachan, and a part to plaintiff personally. The rights of Yankton College are before this court on appeal in another suit, wherein Yankton College is plaintiff against these defendants involving another certificate of the same character as those here involved. The three notes above mentioned, which were purchased by Tripp, aggregated $30,000 and had been executed payable to John B. Rexford, who was an agent of, or in some manner involved in, the fraudulent schemes of Beddow. Rexford indorsed the notes when they were transferred to Tripp. The notes were secured by mortgage upon lands in Bon Homme county known as

the Seaman Ranch. Later Tripp had one of the notes taken up by the makers, and in lieu thereof had two notes executed, one of which was for the amount of the Yankton College fund. Some time thereafter, Tripp, feeling that the notes were not as valuable as they had been represented to be, called upon Rexford and Beddow and demanded that they take up the notes. Beddow repeatedly promised Tripp that he would do so and take an assignment thereof. Later he entered into an agreement with Tripp by which he agreed to pay the notes on or before March 1, 1925, and, in case he failed to do so, he would convey to Tripp a tract of land in California. Upon inquiry Tripp was informed that the California land would be ample security for the indebtedness. No conveyance of the California land was ever made or attempted. In December, 1924, Beddow came to Tripp at Lake Andes, where Tripp, one of the circuit judges of this state, was holding court, and informed him that he had sold some California land and obtained good negotiable paper in payment; that the defendant, Security Bank, would take this paper and issue therefor certificates of deposit drawing interest at 4 per cent. Beddow then offered to turn over to Tripp such certificates of deposit for a part of the $30,000 above referred to, but said it was necessary for him to raise $15,000 in cash in order to make a payment on a California land contract maturing January 1, 1925. He then offered to pay $18,000 of his indebtedness to Tripp in such certificates if Tripp would raise $15,000 and accept other certificates for that amount of cash advanced. Tripp, being anxious to get the $30,000 paid, which included not only his own money but that of others, said he would consider the proposition but that he could not then go to Tyndall. Thereupon Beddow stated that if Tripp desired to talk with the cashier of the bank he probably would come to Lake Andes some evening after the close of business. An evening or two later Beddow and Pfeifle, the cashier, came to the courthouse at Lake Andes, met Tripp, and there Beddow repeated in substance in the presence of Pfeifle his offers and negotiations with Tripp. Tripp asked Pfeifle if it was true that Beddow had sold to the bank good negotiable paper for which certificates of deposit had been issued, and Pfeifle said it was. Some inquiry was made as to the names of the persons upon notes so purchased, and a number of the makers' names were mentioned some of whom were known to Tripp to be responsible. Because of the importance of the deal

Tripp said that he wanted the advice of counsel, and George M. Caster of Lake Andes was called in conference with Tripp, Beddow, and Pfeifle. Caster asked Pfeifle questions of similar import and made a quite thorough investigation so far as inquiry of Pfeifle was concerned as to the transaction in which the certificates were purported to have been issued and as to the financial condition of the bank, and Pfeifle assured both Tripp and Caster that the certificates were all right, regular in every respect, issued for notes actually purchased and discounted, and that the bank was sound. Tripp thereupon agreed to take the certificates of deposit if he could raise the $15,000. Arrangements were finally made whereby Tripp delivered two checks of $5,000 each to Pfeifle, gave a note payable to the Security Bank for $5,000, and thereupon one $15,000 certificate and three $6,000 certificates·payable to Tripp were turned over by Pfeifle to Tripp.

In March, 1925, Tripp while at Tyndall holding court went to the Security Bank, met Pfeifle, and surrendered to him one of the $6,000 certificates, and in lieu thereof received a certificate payable to him for $2,500 and one payable to the Yankton College for $3,500.

The certificate for $15,000 pleaded in the complaint as the fourth cause of action had its inception in a later transaction. After the transaction at Lake Andes there was a balance due Tripp of $15,000 on the Bertus-Johnson notes. On the 19th of December, 1924, Tripp was at Tyndall on court business and in the evening met Beddow at the hotel. Beddow stated to Tripp that he had succeeded in selling enough of his California lands for marketable paper so that he could pay the balance of the Bertus-Johnson notes, but that he was compelled to pay the parties with whom he dealt $10,000 in cash, and if Tripp would raise $10,000 he would turn over to Tripp certificates of deposit to cover the $15,000 and the $10,000 which Tripp was to pay in cash. Tripp inquired as to the character of the paper and the financial responsibility of the makers, and Beddow stated that the notes were good and the makers responsible and such as the Security Bank would take. This occurred after banking hours. Tripp said that he wanted to know definitely from the cashier or some other officer that the bank had investigated the paper and was willing to make the purchase. Pfeifle was called by Beddow and came to the

hotel. Pfeifle stated that Beddow had in fact placed the notes in the bank and that the bank would issue certificates of deposit in the sum of $25,000 in payment therefor. After some discussion as to Tripp's ability to raise the $10,000 in cash, it was finally agreed that Tripp would pay $5,000 in cash and that Pfeifle would loan that amount. About the 22d of December, 1924, Tripp called the bank by telephone from Yankton and was answered by Pfeifle. In that conversation it was arranged that Tripp would send the $5,000 in cash and Pfeifle would send two notes of $2,500, each payable to the Security Bank, to Tripp for execution.

Such notes were mailed to Tripp. Shortly afterwards the notes were returned by mail. Beddow was paid $5,000 in cash by Tripp, and received the Johnson-Bertus notes, and Tripp received $15,000 in certificates. Two certificates of $5,000 each Pfeifle claimed to have retained as security for the three notes of Tripp to the Security Bank, and the transaction was closed. In these transactions Tripp believed that Pfeifle was acting as the cashier of the Security Bank and not otherwise, and had no thought that he was in any manner dealing or talking with him in his individual capacity. No record was made in the records of the bank of any of the certificates, and such certificates were drawn, signed, and delivered by Pfeifle outside of the Security Bank and outside of regular banking hours, and the bank received no consideration. Of the notes given by Tripp, however, one for $5,000 and two for $2,500, one of the $2,500 notes was placed in the bank and credited to the account of Pfeifle and drawn out by him. Some time in January Tripp, desiring to know definitely whether the bank still had the $5,000 note dated December 5, 1924, given at the time of the Lake Andes transaction, went to the Security Bank and there met Pfeifle, who gave to Tripp at the bank a written statement to the effect that the bank still owned and held the $5,000 note and the two $2,500 notes given by Tripp. George Bertus, Martin J. Johnson, and Martin J. Bertus, the makers of the three $10,000 notes, were at the time of the transaction at Lake Andes hopelessly insolvent.

The trial court concluded that defendants are estopped to question the validity of the certificates of deposit in suit, and awarded judgment in favor of plaintiff for $43,480. Defendants appeal from the judgment.

■ Most of the questions presented on this appeal have been fully discussed and decided in other cases in which opinions have been filed simultaneously with this one, namely Citizens' State Bank v. Security Bank et al (S. D.), 222 N. W.932; Bank of Avon v. Smith et al (S. D.), 222 N. W. 936; Menno State Bank v. Security Bank et al (S. D.), 222 N. W. 938, and Wieger and Schelske v. Smith et al (S. D.), 222 N. W. 941, and no further discussion of those questions is necessary here. The sufficiency of the pleadings to support an estoppel is presented and argued in this case, but all facts were stipulated and agreed to, and they are sufficient to support the estoppel under the decisions above cited. If necessary the pleadings can be amended to conform to the evidence. We find no other question meriting discussion.

■ The extent of respondent's damage is not, however, the amount allowed by the court. The present consideration given by respondent for the certificates was $10,000 in the transaction at Lake Andes, and $5,000 at Tyndall. The notes executed by Tripp as a part of the consideration, $10,000 in all, were payable to the bank. One of these went into the bank; the others were, so far as appears by the record, never out of the hands of Pfeifle. The note in the bank should be canceled, and the others are worthless in the hands of Pfeifle. Respondent has his claim against Beddow, which is, so far as the record shows, worth as much now as when the void certificates were taken in pretended satisfaction.

The judgment is reversed, with direction to enter judgment in favor of respondent for $15,000, with interest from date of payment to date of suspension and to cancel the $2,500 note of respondent given to the bank and to adjudge that the bank has no right or interest in the other notes mentioned. No costs to be taxed in this court.

POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.