MENNO STATE BANK, Respondent, v. SECURITY BANK OF TYNDALL, et al, Appellants.

(222 N. W. 938.)

(File No. 6701. Opinion filed January 5, 1929.)

*T. B. Thorson,* of Pierre, *Roy E. Willy,* of Sioux Falls, *F. M. Scoblic,* of Tyndall, and *Hitchcock & Sickel,* of Mitchell, for Appellants.

*Warren Dimock,* of Menno, and *Wicks & Quinn,* of Scotland, S. D., for Respondent.

BURCH, P. J. This action is brought by the Menno State Bank to recover upon two certificates of deposit alleged to have been issued to plaintiff by the Security Bank of Tyndall. The Security Bank is insolvent and in the hands of the superintendent of banks for liquidation. Defendant F. R. Smith is the superintendent

of banks. All facts were stipulated and found by the court as stipulated.

Both banks are corporations. At all times material to the issues involved Geo. E. Pfeifle was the cashier and managing officer of the Security Bank, defendant. Under date of November 25, 1924, said Pfeifle issued to plaintiff two certificates of deposit, one for $4,000 and the other for $5,000, on the regular form of the Security Bank, and delivered them to one Frank R. Beddow. These certificates have their inception in a fraudulent scheme of Pfeifle and Beddow, who conspired to issue certificates of deposit upon the regular forms then in use by the Security Bank and to negotiate them for their own use and benefit. Beddow was in no way connected with the Security Bank as an officer, agent, or employee. Such certificates were to be made payable to the order of such persons as Beddow would designate, were to be delivered to Beddow or his representative for negotiation, no record was to be made in the books of the bank, and the bank was to receive no consideration therefor.

In furtherance of this scheme Pfeifle took from the vaults of the Security Bank the last-numbered pad of blank certificates of deposit, containing 100 blanks, and issued therefrom a number of false fraudulent, and fictitious certificates of deposit. The two certificates in this suit are two of such false, fraudulent and fictitious certificates; others are involved in the cases of Citizens' State Bank v. Security Bank (S. D.), 222 N. W. 932; Bank of Avon v. Smith (S. D.), 222 N. W. 936; Wieger v. Smith, Superintendent of Banks (S. D.), 222 N. W. 941; Robert B. Tripp v. Smith (S. D.), 222 N. W. 943; and Yankton College v. Smith (S. D.), 222 N. W. 946, opinions in which are filed simultaneously with this opinion.

The certificates involved in this suit originated in the following transaction: Some time prior to the purchase of these certificates by plaintiff, plaintiff had made various loans to Beddow aggregating more than $10,000. At the time of the purchase of the certificates a considerable portion of this amount remained unpaid. For the purpose of making the sale of the certificates to plaintiff, Beddow caused Pfeifle to fill out three blank certificates of deposit from the pad above referred to, inserting therein the name of Fred Kostomlatsky as payee. Two of these certificates

were in the sum of $4,000 and one in the sum of $5,000, making the total of $13,000. Kostomlatsky was evidently one of the conspirators working with Beddow in marketing spurious certificates of deposit. Beddow and Kostomlatsky went to Menno together and there met the Ulmers, principal officers of the Menno State Bank, in their banking house. Beddow and Kostomlatsky represented that they were closing a land deal with one Chatsky for some California property, and that the Security Bank was assisting in the transaction and had purchased certain notes of Chatsky in connection with the transaction, but that the Tyndall Bank in discounting these notes did not pay cash, but had issued three certificates of deposit therefor. The three certificates issued to Kostomlatsky were then shown to the Ulmers, and it was claimed they were the certificates issued by the Security Bank in payment of the Chatsky notes. The two conspirators said they must have $7,500 in cash to complete the land deal with Chatsky, and offered to sell these certificates to plaintiff bank, the amount of Beddow's indebtedness to be deducted from the purchase price and the balance to be paid in cash. The Ulmers agreed to purchase the certificates on such terms provided Beddow would have new certificates issued direct to the Menno Bank in lieu of those offered and secure a letter from the Security Bank addressed to them to the effect that the certificates were valid obligations of the bank, and that the bank had no defense thereto. Beddow returned to Tyndall with the Kostomlatsky certificates, and Pfeifle reissued three certificates, using blanks from the said pad, naming the Menno State Bank as payee in the place of Kostomlatsky. Two of these certificates are involved in this suit. The next day Beddow returned with these certificates to the Menno State Bank and delivered them to that bank. No letter was brought by Beddow from the Tyndall Bank, and the plaintiff bank had received no word from Pfeifle or any other officer of the Security Bank. Before completing the deal the officers of plaintiff bank tried to call the Security Bank by telephone, but did not get their call through. After contracting for the purchase of the certificates, totaling $13,000, plaintiff credited $4,500 on Beddow's indebtedness, gave Kostomlatsky $5,000, took up a $2,500 check of Kostomlatsky's on the Menno Bank, and credited $1,000 to Beddow's checking account, which Beddow checked out. About a week after the com-

pletion of the transaction plaintiff received from Pfeifle a letter on the stationery of the Security Bank addressed to one of the Ulmers, the substance of which was that at the request of Beddow the name of the payee of the three certificates had been changed to the Menno Bank.

No consideration was received by the Security Bank for any of the certificates above mentioned, no record was made on its books of the issuance of any of them, and the transaction formed a part of the general conspiracy between Beddow and Pfeifle.

The trial court concluded that the defendants are estopped to question the validity of the certificates of deposit, and awarded judgment for plaintiff for the sum of $9,000 and interest. Defendants appeal from the judgment.

The principal question on this appeal involves the liability of appellant upon the false, fraudulent, and fictitious certificates issued by Pfeifle without authority in the interest of himself and others, in furtherance of a conspiracy and against the interest of appellant. The same question was presented in Citizens' State Bank v. Security Bank of Tyndall (S. D.), 222 N. W. 932, where the question is discussed and decided adversely to appellant's contention. That case involved another certificate of the same character, issued by the same officer, and in furtherance of the same fraudulent scheme. The opinion in that case is filed simultaneously with this opinion. That case on such question is decisive of this question, and no further discussion is necessary here.

Another question in this case not in the Citizens' State Bank Case, but in the Bank of Avon Case, is in reference to the liability of appellant to a purchaser with knowledge that the certificates were issued without an actual deposit of money, but represented to be for notes discounted. This question is discussed and decided against appellant in Bank of Avon v. Smith (S. D.), 222 N. W. 936, and needs no further discussion.

This case differs in one respect from either the Citizens' State Bank Case or that of the Bank of Avon, in that respondent purchased the certificates here involved from Beddow and Kostomlatsky (neither of whom where in any way connected with appellant bank, as an officer, agent or employee) without any direct communication with any officer of the bank, whereas in the other cases Pfeifle purported to speak for the bank in the final negotia-

tions resulting in the purchase of the certificates. Appellants contend that in no event can respondents recover in this case, because the certificates issued to Kostomlatsky were not negotiable and so marked on their face; that in the hands of Kostomlatsky or Beddow they were void and they could convey no better title than they had; that, being nonnegotiable, they were open to all defenses of the bank in the hands of an assignee; that the substitution of the certificates payable to the bank for those of Kostomlatsky constituted an assignment of such void certificates and therefore there can be no recovery. This position is tenable only upon the supposition that appellant in some way issued the certificates but did not authorize their sale. A considerable portion of the briefs of both parties argue from that standpoint. Here nothing was authorized. Everything that was done by Pfeifle or his coconspirators was wholly unauthorized. None of them were actual agents of appellant in such acts. The bank no more issued the certificates than it received the proceeds.

As we have seen in the Citizens' State Bank Case, there is no logical reason for holding the bank for anything it has done or failed to do. Its liability is founded in public policy. How far, then, must the estoppel against the bank extend to enforce its liability for Pfeifle's acts? To hold that it may not deny his acts, but may deny receipt of the proceeds of his fraudulent acts is to render the estoppel barren. To make it effectual the bank must stand in Pfeifle's shoes and return his illgotten gains.

The certificates originally issued to Kostomlatsky were void in the hands of Kostomlatsky or Beddow, being subject to the defense that they were without consideration. Transferring them did not convey any right to the transferee. But suppose the bank had in fact issued the certificates, and sent some one out to sell them and they were sold and the bank received the proceeds, would not the bank be estopped to plead there was no consideration for their issuance? The purchaser furnished the consideration for the transaction, consisting of their issuance for sale and their sale. Many transactions are void for want of consideration until some subsequent transaction furnishes the consideration. Typical of such is an accommodation note, which is without consideration in the hands of the payee but not so in the hands of a transferee. We do not wish to be understood as holding that the certificates by

reason of any such transaction are valid. They are void for any purpose, but, the bank being estopped to deny the issuance of the certificates for the purpose of sale and their sale for a consideration, it cannot be permitted to rely on their invalidity without liability for the price paid for such void instruments. By so holding the bank rights the wrong committed in its name by its managing officer, Pfeifle, whose faithful conduct in such capacity the bank insured.

The present consideration paid for the certificates, which so far as the record shows is the only damage respondent suffered, is $7,500 to Kostomlatsky and $1,000 to Beddow, total $8,500.

The judgment is reversed, with direction to render judgment for respondent for $8,500, with interest from date paid to date of suspension. No costs to be taxed in this court.

POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.